UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE ESTRELLA (#M-25649), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11 C 1838 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| TOM DART, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jose Estrella brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he was denied adequate medical care for an injury to his hand at the Cook County Jail. Plaintiff names as Defendants unknown officers and Cook County Sheriff Tom Dart, who remains in the case solely for the purpose of naming the John Doe medical Defendants.[1] Presently before the Court are Defendant Tom Dart's motion for summary judgment, Plaintiff's motion in response to Defendant's motion for summary judgment, and Plaintiff's motion for appointment of counsel. For the reasons stated in this order, Defendant's motion for summary judgment is granted and Plaintiff's motion in response and motion for appointment of counsel are denied.

**I.    BACKGROUND**

On March 31, 2010, Plaintiff was a pre-trial detainee at the Cook County Jail. (Def's 56.1(a)(3) statement, ¶ 1.) Plaintiff was housed in Division 10, Living Unit 4C. (Def's 56.1(a)(3)

---

[1] According to the docket Plaintiff never moved to amend his complaint with the names of the John Doe Defendants. Given that the summary judgment record demonstrates that Plaintiff cannot succeed on any of his claims, the Court dismisses this case without waiting for the John Doe Defendants to be named.

statement, ¶ 3.) On March 31, 2010, Plaintiff was involved in an altercation with Inmate Pullman during the 3:00PM – 11:00PM shift. (Def's 56.1(a)(3) statement, ¶ 4.) During the altercation, Plaintiff injured his hand either from striking Inmate Pullman or as the result of Plaintiff falling down. (Def's 56.1(a)(3) statement, ¶ 5.)

During the altercation, Plaintiff also suffered a bloody lip and had pain in his right hand in a region extending from the knuckle of the middle finger to the knuckle of his pinky finger. (Def's 56.1(a)(3) statement, ¶ 6.) After officers broke up the fight, Plaintiff was taken to the bullpen area of Division 10 for a couple of minutes before being taken back up to the second floor. (Def's 56.1(a)(3) statement, ¶ 7.) Plaintiff was then checked by a nurse and sent to Cermak Health Service. (Def's 56.1(a)(3) statement, ¶ 8.) Once Plaintiff reached Cermak Health Service, Plaintiff met with a doctor who wrapped his hand with an elastic bandage and gave him ibuprofen for the pain. (Def's 56.1(a)(3) statement, ¶¶ 9, 10.)

The next day Plaintiff returned to Cermak Health Service and received an X-ray of his hand from another doctor. (Def's 56.1(a)(3) statement, ¶ 11.) This doctor told Plaintiff that he saw nothing wrong with his hand; there were no broken bones or fractures. (Def's 56.1(a)(3) statement, ¶ 12.) For the next week, Plaintiff complained of the pain to nurses who dispensed medications in Division 10. (Def's 56.1(a)(3) statement, ¶ 13.) Plaintiff continued taking ibuprofen for three to four days, which eased the pain in Plaintiff's hand. (Def's 56.1(a)(3) statement, ¶¶ 14, 15.) In his deposition, Plaintiff testified that, on a scale of one to ten, ten being highest and one being the lowest, the ibuprofen decreased the pain from a nine to a four. (Def's 56.1(a)(3) statement, ¶ 15.) Plaintiff's hand hurt less a week later, and was getting better over time; however, Plaintiff continues to have some pain in his hand. (Def's 56.1(a)(3) statement, ¶ 16, and Plaintiff's response to Def's.

56.1 (a)(3) statement, ¶ 16.) At the time of his deposition in July of 2011, Plaintiff testified that the pain in his hand is very small unless he puts a lot of pressure on it. (Def's 56.1(a)(3) statement, ¶ 26.)

Plaintiff asked two unidentified sergeants and unidentified officers for medical attention, but was told that they had no control over medical. (Def's 56.1(a)(3) statement, ¶ 17.) At some point in April 2010, Plaintiff met with an unidentified Division 10 dispensary doctor who noted that Plaintiff's hand had tremors, a condition predating the altercation on March 31, 2010. (Def's 56.1(a)(3) statement, ¶ 18.) This doctor referred Plaintiff to a nerve specialist at Stroger Hospital. (Def's 56.1(a)(3) statement, ¶ 19.) Plaintiff saw a nerve specialist at Stroger Hospital three or four times. (Def's 56.1(a)(3) statement, ¶ 20.)

The "Detainee Grievance Procedure" was available to all detainees at the Cook County Jail in 2010 and 2011. (Def's 56.1(a)(3) statement, ¶ 2.) Plaintiff filed a grievance with a control number of 2010 X 1936, signed by him though written by another inmate, on July 25, 2010. In that grievance, Plaintiff requested treatment for his hand and claimed that he had been denied an x-ray. (Def's 56.1(a)(3) statement, ¶ 21.) The response to the grievance indicated that Plaintiff had an appointment at Cermak on August 2, 2010 for a follow-up. (Def's 56.1(a)(3) statement, ¶ 22.) Plaintiff appealed the grievance on August 10, 2010, alleging that he went to Cermak but did not receive any treatment. (Def's 56.1(a)(3) statement, ¶ 23.)

Plaintiff filed another grievance with control number 2010 X 2127 on August 18, 2010, requesting medical attention for his hand. (Def's 56.1(a)(3) statement, ¶ 24.) Plaintiff did not appeal this grievance. (Def's 56.1(a)(3) statement, ¶ 25.)

On March 23, 2011, the Court completed its initial review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, dismissing all named Defendants other than Tom Dart. (ECF Doc. 4.) Tom Dart was expressly retained as a Defendant solely for the purpose of identifying the John Doe Defendants in this case. *Id.* Plaintiff has seen Thomas Dart only on television, and has never spoken or written to him personally. (Def's 56.1(a)(3) statement, ¶ 27.) Plaintiff has never sought leave to amend his complaint to name the John Doe Defendants.

## II. Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In turn, summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. And the non-moving party "must do more than simply show that there

is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S at 252.

When Defendant filed his motion for summary judgment, he included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982); and Local Rule 56.2. This notice clearly sets out the requirements of this Court's Local Rule 56.1. In particular, the notice explains that Plaintiff's response must comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1.

Plaintiff responded to Defendant's L.R. 56.1 statement and only partially denied one of the statements. See Plaintiff's response to Defendants' Local Rule 56.1 Statement ¶ 16. As Plaintiff admits virtually all of the facts contained in Defendant's L.R. 56.1 statement of facts, the majority of the facts are not in dispute and the Court relies on those facts. To the extent that Plaintiff partially contests one statement, that statement will be discussed in the analysis that follows.

## III. Analysis

Defendant argues that Plaintiff failed to fully exhaust his administrative remedies and that his claim fails on the merits.

### A. Failure To Exhaust

Exhaustion of administrative remedies pursuant to the Prison Litigation Reform Act is required for all detainee suits seeking redress for jail circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes. See *Porter v.*

*Nussle*, 534 U.S. 516 (2002). Under 42 U.S.C. § 1997e(a), the court is directed to dismiss a suit brought with respect to jail conditions if the court determines that a plaintiff has failed to exhaust his administrative remedies. See *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999).

A detainee must take all the steps required by the institution's grievance system in order to exhaust his administrative remedies properly. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002). Moreover, exhaustion is a precondition to filing suit, so that a detainee's attempt to exhaust available administrative remedies in the midst of litigation is insufficient. See *Ford*, 362 F.3d at 398; *Perez*, 182 F.3d at 536-37.

To exhaust remedies under § 1997e(a), a detainee or prisoner "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; see also *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999) ("[T]he exhaustion requirement in § 1997e(a) is directed at exhausting the prisoner's administrative remedies in the corrections system, and investigation by another agency does not satisfy the requirement of the statute."). The purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before a federal suit is initiated. See *Porter*, 534 U.S. at 524-25. However, officials cannot take an unfair advantage of the exhaustion requirement by making such exhaustion unavailable. See *Dole*, 438 F.3d at 809. For example, if officials fail to respond to a properly filed grievance or take other affirmative steps to prevent a prisoner/detainee from being able to fully exhaust his administrative remedies, grievance procedures are deemed "unavailable." *Id.*

Here, Plaintiff filed two grievances regarding the injury to his hand. Defendant contends that Plaintiff did not appeal the second grievance. Plaintiff does not contest the fact that he did not appeal the second grievance. However, Defendant has admitted in his statement of facts that Plaintiff did appeal the first grievance. Thus, based on these facts, a genuine issue of material fact exists as to whether Plaintiff fully exhausted his administrative remedies prior to filing suit.

**B. Failure on the Merits**

Pretrial detainees have a right to adequate medical treatment under the Fourteenth Amendment. See *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). Claims of deliberate indifference to a serious medical need of a pretrial detainee under the Fourteenth Amendment employ the same standard for deliberate indifference to a serious medical need under the Eighth Amendment. *Id.* at 401. A claim of deliberate indifference includes both an objective and subjective element. See *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). As to medical care, "the objective element requires that the inmate's medical need be sufficiently serious" to implicate the Constitution. *Guiterrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if has been diagnosed by a physician as mandating treatment or it is so obvious that even a lay person would recognize the necessity of medical treatment. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

The subjective element requires that the prison official act with sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). The negligent or inadvertent failure to provide adequate medical care is not actionable under 42 U.S.C. § 1983 because such a failure is not an "unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 106. Furthermore, medical

7

negligence is insufficient to demonstrate deliberate indifference. See *Foelker*, 394 F.3d at 513. However, a prisoner does not need to prove that the prison official "intended, hoped for, or desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Instead, it is sufficient if the prisoner demonstrates that the prison official actually knew of a substantial risk of harm to the prisoner and acted or failed to act in disregard to that risk. See *Walker*, 293 F.3d at 1037. An inmate can demonstrate that a prison official knew of a substantial risk of harm if the fact of that risk is obvious. *Id.* In assessing whether a violation has occurred, the Court examines the totality of the medical care provided; isolated incidents of delay do not rise to the level of deliberate indifference. See *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d at 1374-75.

Plaintiff's hand injury received treatment by several doctors, was wrapped in an elastic bandage, and was x-rayed. Plaintiff was further referred by a doctor to a nerve specialist at Stroger Hospital for the injury. Thus, under *Roe*, the record supports a finding that Plaintiff has established a serious medical condition. However, Plaintiff has not presented evidence that Defendant acted with deliberate indifference. Plaintiff has failed to demonstrate that Tom Dart was involved in any of Plaintiff's medical treatment or that he was even aware that Plaintiff needed medical care for his medical conditions. Rather, the record establishes that the totality of treatment provided to Plaintiff was constitutionally sufficient and did not rise to a level of deliberate indifference. After the altercation in which Plaintiff was injured, he was seen by a nurse and sent to Cermak Health Service. Once at Cermak, Plaintiff saw a doctor, who wrapped his hand in an elastic bandage and gave him ibuprofen for pain. The next day, Plaintiff was seen by another doctor who x-rayed his hand and confirmed that the injury was not a fracture or broken bone. Plaintiff took ibuprofen for three or four days, and the ibuprofen effectively managed Plaintiff's level of pain. Plaintiff saw another

physician within a month who sent him to a nerve specialist at Stroger Hospital. Plaintiff saw that nerve specialist three or four times. Plaintiff's level of pain has decreased over time so that his hand only hurts when he puts a lot of pressure on it. Based on the totality of the care provided by medical personnel at the Cook County Jail, Cermak Health Service, and Stroger Hospital, a reasonable juror could not find that Defendant acted with deliberate indifference to Plaintiff's medical needs.

As the Seventh Circuit instructs, "the Eighth Amendment does not require that prisoners receive 'unqualified access to health care;'" "[r]ather, they are entitled to only 'adequate medical care.'" *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (citations omitted). Here, the unnamed physicians and nurses of the dispensary at Cook County Jail, Cermak Health Services, and Stroger Hospital provided Plaintiff with continuous, adequate medical care to manage his injury and ongoing pain. Thus, even crediting to Plaintiff's testimony that on occasion he was told by security personnel that they had no control over his medical care. There is no indication in the record that these unnamed security personnel acted unreasonably or in anyway delayed the care that Plaintiff did receive. See *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (under the Constitution, a prisoner entitled to "reasonable measures to meet a substantial risk of serious harm"). Based on the medical treatment provided by Cook County Jail personnel, Cermak Health Service, and Stroger Hospital, there is insufficient evidence in the record to create a genuine issue of fact for trial that any conceivable defendant was deliberately indifferent to Plaintiff's medical condition in violation of the Constitution. Accordingly, the Court grants Defendant's motion for summary judgment and dismisses this case.

Plaintiff may appeal this final order by filing a notice of appeal pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure. If Plaintiff seeks to appeal, he must file his notice of

appeal within 30 days from the date of this final order. See Fed. R.App. P. 4(1)(a). At that time, Plaintiff must pay all applicable fees pursuant to Rule 4(e) of the Federal Rules of Appellate Procedure. As of November 1, 2011, the Seventh Circuit imposes a docketing fee of $450.00 and a filing fee of $5.00, for a total fee of $455.00. If Plaintiff seeks leave to appeal *in forma pauperis,* he must comply with the requirements of Rule 24 of the Federal Rules of Appellate Procedure, which sets forth the required content of a motion for leave to proceed *in forma pauperis* on appeal. See Fed. R.App. P. 24. If Plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). If granted *in forma pauperis* status, the fee can be paid in installments. Furthermore, if the appeal is found to be non-meritorious, Plaintiff also may be assessed a "strike" under 28 U.S.C. § 1915(g). Plaintiff is cautioned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment [32] is granted. Plaintiff's motion in response to Defendant's motion for summary judgment [41] and Plaintiff's motion for appointment of counsel [47] are denied. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff. The case is terminated.

Dated: May 29, 2012

_____
Robert M. Dow, Jr.
United States District Judge